UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JOHN L. WOOD, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. 4:09-CV-1390 |
| | § | |
| KATY INDEPENDENT SCHOOL DISTRICT, | § | |
| *et al.*, | § | |
| | § | |
| Defendants. | § | |

## OPINION AND ORDER

Pending before the Court are three motions for summary judgment: Defendant Katy Independent School District's ("KISD") motion (Doc. 80), Plaintiffs John and Rene Wood's motion (Doc. 82-12), and Defendant Texas Education Agency's ("TEA") motion (Doc. 88). KISD moves for summary judgment on the grounds that the Plaintiffs have failed to meet their burden of proof "to show by a preponderance of the evidence that the special education provided to the student was inappropriate and that Plaintiffs' retaliation claim and claims under the Texas Dyslexia Act and Texas Administrative Code fail as a matter of law." Doc. 80. Plaintiffs move for summary judgment on the grounds that "chronic, gross violations of due process throughout the administrative hearing" denied Plaintiffs their opportunity to present evidence and that the administrative record indicates that KISD and TEA failed to provide their son, Rob Wood, with a free appropriate public education as required by law. Doc. 82. TEA moves for summary judgment on the same grounds as KISD and on the additional grounds that Plaintiffs failed to exhaust their administrative remedies for their claims against TEA as required by law and thus are precluded now from brining those claims in this Court. Doc. 88.

For the reasons discussed below, the Court finds that TEA's motion for summary

judgment should be granted. Because the Court finds that both KISD's and the Woods' motions for summary judgment are deficient, contain manifest errors in citations, and are replete with references to evidence either not before the Court or unreasonably difficult to locate in the extensive administrative record, their motions are denied. Both parties may file renewed motions for summary judgment that conform to Court's instructions below within thirty days of the date of this order.

Procedural Background

As the Court described in its previous opinion and order, this is an appeal of a school district hearing officer's decision under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400 *et seq.* Plaintiff Robert Wood, son of Plaintiffs John and Rene Wood, attended Seven Lakes High School ("SLHS") located in the Katy ISD in the 2005–2006 and 2006–2007 school years. Doc. 8. During this period, Katy ISD's Admission, Review, and Dismissal Committee ("ARDC") classified Robert Wood as a student with a disability under the IDEA, 20 U.S.C. § 1401(3). *Id.* at 3–4. As a result of this classification, Katy ISD provided Robert Wood with special education services. *Id.* Plaintiffs were dissatisfied with the special education support that the Defendants provided to Robert Wood and multiple meetings with teachers to discuss Robert Wood's Individualized Education Plan ("IEP").

On September 12, 2007, Plaintiffs requested a due process hearing before the Texas Education Agency ("TEA") pursuant to the IDEA. *Id.* at 7. Plaintiffs complained "that Rob's educational program was inappropriate; that the District retaliated against plaintiffs after they brought their concerns about the program and about IEP noncompliance to the District's attention; that the District discriminated against Rob and others students [*sic*] because of disability; that the District inflated Rob's grades in order to pass him from grade to grade; and

that the District withheld, modified, or destroyed documents pertaining to Rob's education." *Id.* The District objected to Plaintiffs' inclusion of non-IDEA issues in their request because TEA hearing officers do not have jurisdiction to hear non-IDEA claims, pursuant to 20 U.S.C. § 1415(c). *Id.* On September 30, 2007, the school district's hearing officer dismissed the non-IDEA claims contained in the request and ordered Plaintiffs to amend their request. *Id.* at 8. Plaintiffs subsequently filed an amended hearing request. *Id.*

The due process hearing before the TEA, held on July 8 and November 3–6, 2008, addressed several issues. *See* related case, no. 4:08-cv-0358, Doc. 41 at 2. First, the TEA considered whether Katy ISD failed to provide Robert Wood with a free appropriate public education ("FAPE") due to (a) inappropriate placement of Robert Wood, (b) Robert Wood's inadequate IEP, and (c) failure of its special education and related services to address Robert Wood's needs adequately. *Id.* Second, the TEA examined whether Katy ISD failed to consider independent evaluations of Robert Wood that his parents provided to the ARDC. *Id.* Third, the TEA questioned whether Katy ISD failed to implement Robert Wood's IEP, including altering the IEP without consulting with or providing notice to his parents. *Id.* Fourth, the TEA asked whether Defendants' allegedly inaccurate reports of Robert Wood's grades and progress resulted in the withholding of information from his parents. *Id.* Fifth, the hearing investigated whether the school district took retaliatory action against Plaintiffs, in violation of the IDEA, following their challenges to the sufficiency of Robert Wood's IEP. *Id.*

On January 31, 2008, Plaintiffs filed Civil Action No. 4:08-cv-0358, alleging violations of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101 *et seq.*; the Civil Rights Act of 1964, as amended; 42 U.S.C. § 1983; the Rehabilitation Act of 1973; 29 U.S.C. § 794 ("Section 504"); the Fourteenth Amendment of the United States Constitution; and Texas

law. No. 4:08-cv-0358, Doc. 1 at 2. On December 2, 2008, Defendants moved to dismiss for lack of subject-matter jurisdiction because Plaintiffs had failed to satisfy the IDEA's exhaustion requirement before filing suit in this Court. Doc. 8 at 8.

During this time the administrative hearing continued based on the revised hearing request. *Id*. On February 7, 2009, the hearing officer found in favor of the District. *Id.* at 9. *See* Doc. 8-1.

On May 7, 2009, Plaintiffs filed the instant case to appeal the hearing officer's decision. Doc. 8 at 9. *See also* Doc. 1.

On August 6, 2009, the Court granted Defendants' motion and dismissed Plaintiffs' first case for failure to exhaust their administrative remedies under the IDEA. No. 4:08-cv-0358, Doc. 41.

On August 14, 2009, Plaintiffs filed an amended complaint in this case alleging violations of the IDEA; discrimination, retaliation, and failure to accommodate under Section 504 of the Rehabilitation Act; discrimination and retaliation under the ADA; violations of the Fourteenth Amendment; and violations of the Texas Education Code § 38.003 and Texas Administrative Code §§ 74.28 and 89.1001 *et seq.*

On September 27, 2010, the Court dismissed Plaintiffs' claims against Defendants Board of Trustees of the Katy Independent School District, Christie Whitbeck, and Kevin O'Keefe and dismissed Plaintiffs' claims under the Fourteenth Amendment of the United States Constitution, Section 1983, Section 504 of the ADA and the Rehabilitation Act, as well as any claims for compensatory or punitive damages against any party. Doc. 43.

On September 20, 2011, the Court dismissed Plaintiffs' claims against Defendant TEA arising out of TEA's failure to oversee the Hearing Officer and the due process hearing because

Plaintiffs failed to raise their objections during the hearing. Doc. 65. The Court also granted TEA's motion to dismiss Plaintiffs' claims regarding KISD's use of the Student-Centered Options for Reaching Excellence ("SCORE") procedure manual for evaluating students' learning abilities on the grounds that Plaintiffs had failed to raise the issue at the hearing and previously had disavowed bringing a claim relating to the policy, but denied TEA's motion to dismiss Plaintiffs' claims that TEA violated the IDEA by failing to fulfill its supervisory role with regard to KISD's provision of services to Plaintiffs. *Id.* The Court also denied KISD's request for summary judgment of Plaintiffs' claims on the grounds that Plaintiffs had not yet filed the complete administrative record. *Id.* The Court found Plaintiffs' counsel's excuse for failing to file the complete record were disingenuous and ordered the Plaintiffs to file a complete, certified copy of TEA's administrative record. *Id.*

On October 19, 2011, TEA filed the administrative record with this Court (Doc. 67) and on November 10, KISD filed the complete record on two CDs comprising five PDF documents of between 595 and 1842 pages. Doc. 72.

On January 9, 2012, TEA and KISD moved separately for summary judgment of Plaintiffs' claims against them. Docs. 79, 80. That same day, Plaintiffs filed their own motion for summary judgment of their claims and, the following day, an amended motion remedying errors Plaintiffs' counsel encountered as a result of difficulties e-filing the motion on January 9. Docs. 81 (original motion), 82-12 (amended motion), 83 (motion for leave to file amended motion for summary judgment). Although labeled a "motion for summary judgment," Docket Entry 82 is, in fact, a 69 page "statement of facts" to which Plaintiffs counsel attached numerous exhibits including Docket Entry 82-12, a 35-page memorandum of law in support of their motion. Plaintiffs' counsel also attached to the "statement of facts" two lengthy affidavits–one her own

and one of Plaintiff John Wood–and approximately 300 additional pages of exhibits. *See* Docs. 82-1 to -14.

On January 12, TEA filed an amended motion for summary judgment in which it joined in KISD's motion for summary judgment and additionally moved for summary judgment on the grounds that the Woods failed to exhaust their administrative remedies against TEA in the underlying administrative hearing. Doc. 88.

I. TEA's Motion for Summary Judgment

TEA asserts that "Plaintiff's claim against the TEA [must be] dismissed because Plaintiffs failed to exhaust their administrative remedies as to any complaint against the TEA . . . [because they] did not name the TEA in the underlying request for due process that is the subject of this appeal." Doc. 88 at 4. Plaintiffs have responded that "[t]he IDEA does not provide a mechanism whereby parents may request an administrative due process hearing by which to complaint [sic] about the state education agency." Doc. 96 at 2.

If relief is available under the IDEA, section 1415(f) requires that the plaintiff exhaust his administrative remedies pursuant to section 1415(b)(2) and (c) before initiating a civil action in federal district court. Therefore, "it is beyond doubt that the statute provides that a plaintiff must first exhaust the state administrative remedies before bringing an action in federal court, if the complaint is one falling under § 1415(b)(1)(E)." *Gardner v. Sch. Bd. of Caddo Parish*, 958 F.3d 108, 111 (5th Cir. 1992).

Although there are few district court decisions addressing whether plaintiffs are required to exhaust administrative remedies against state, and not just local, education agencies, it appears to the Court that those that have done so have uniformly held that plaintiffs must satisfy the IDEA's exhaustion requirements with respect to both before seeking to sue those agencies in

court. *See B.I. v. Montgomery Cnty. Bd. of Educ.*, 750 F. Supp. 2d 1280, 1284 (M.D. Ala. 2010) (plaintiffs' claims against Alabama Department of Education barred by plaintiffs' failure to exhaust administrative remedies); *Whitehead ex rel. Whitehead v. Sch. Bd. for Hillingsborough Cnty.*, 932 F.Supp. 1393, 1396 (M.D. Fla.1996) (requirement that plaintiffs name state department of education in administrative hearing furthered IDEA's "purpose of requiring exhaustion of remedies" by "provid[ing] state agencies an opportunity to resolve system defects without unnecessary judicial involvement"); *McGraw v. Bd. of Educ. of Montgomery Cnty.*, 952 F. Supp. 248, 255 (D. Md. 1977) ("[N]o issues regarding the State Defendants' conduct should be included in an appeal" when "no claims were raised against the State defendants in [administrative] proceedings."); *Irby v. Montgomery Cnty. Bd. of Educ.*, No. 2:09–cv–752–MHT, 2010 WL 1267135, at *4 (M.D. Ala. Feb. 5, 2010) (Moorer, Mag. J.) (plaintiffs failed to exhaust administrative remedies against state department of education because they failed to name them in underlying due process hearing), *adopted by* 2010 WL 1267158.

Plaintiffs do not dispute that TEA was not named in the underlying administrative complaint and that they are asserting those claims for the first time before this Court. Plaintiffs argue that their claims against the TEA nevertheless are not barred because "[t]he IDEA does not provide a mechanism whereby parents may request an administrative due process hearing by which to complaint [sic] about the state education agency." Doc. 96 at 2. Although it is true that "parents may by-pass the administrative process where exhaustion would be futile or inadequate," a plaintiff bears the burden of demonstrating futility or inadequacy. *Gardner v. Sch. Bd. of Caddo Parish*, 958 F.2d 108, 112 (5th Cir. 1992). To meet that burden, a plaintiff must advance specific reasons why exhaustion would have been inadequate and futile. *Flores v. Sch. Bd. of DeSoto Parish*, 116 F. App'x. 504, 511 (5th Cir. 2004). Plaintiffs do not allege that they

attempted to raised their claims against TEA before the IHO and subsequently were denied the opportunity. Nor do they point to any supporting authority for the proposition that they were unable to raise such claims. Plaintiffs have failed to satisfy their burden of showing that exhaustion of remedies would have been inadequate and futile.

Plaintiffs additionally claim that many of their claims against TEA arose out of the hearing itself, inasmuch as the hearing officer was biased and participated in *ex parte* conferences with KISD's attorney. *See* Doc. 96 at 4. While such allegations may influence the Court's review of a hearing officer's decision, they do not give rise to independent claims against the TEA, nor does the TEA's failure adequately to oversee its hearing officer create a claim against TEA for failure to provide Plaintiffs' son a FAPE. Because Plaintiffs failed to exhaust their administrative remedies against TEA before bringing claims against them in this Court, their claims must be dismissed.

II. KISD's and the Woods' Motions for Summary Judgment

As the parties are aware, this case has been pending before this Court, in its current and previous iterations, for more than four years. The two summary judgment motions currently pending before the Court, from Plaintiffs and remaining Defendant KISD, should give the Court the opportunity to make an independent, "virtually *de novo*" decision based on preponderance of the evidence before it as to the validity of each parties' claims and arguments. 20 U.S.C. § 1415(i)(2)(C); *Cypress-Fairbanks ISD v. Michael F.*, 118 F.3d 245, 252 (5th Cir. 1997). Unfortunately, based on the briefings currently before it, the Court cannot do so.

The Court's review of the IHO's decision depends heavily on the evidence contained in the administrative record. After Plaintiffs filed a truncated administrative record in connection with their first motion for summary judgment, the Court ordered Plaintiffs to file the complete

record. *See* Doc. 65. On October 19, 2011, TEA filed the administrative record with this Court (Doc. 67) and on November 10, KISD filed two CDs comprising five PDF documents of between 595 and 1842 pages, which represented the complete administrative record in this case. Doc. 72. The record totals 6561 pages, by the Court's count, and comprises educational testing records going back at least as far as early 1999, school assessments from that same year and every year until 2007, numerous report cards, strings of emails from every year of Rob's time in KISD, and thousands of pages of hearing transcripts. *See id.* Additionally, and despite the Court's clear admonition that "[n]o other evidence shall be filed in this case" after the parties filed the complete administrative record, Plaintiffs have attempted to introduce approximately 450 pages of affidavit testimony and accompanying exhibits with their motion for summary judgment. The length and detail of the record, the complexity of the factual and legal issues presented to the Court, and the long history of this case should have been sufficient to compel the parties to submit succinct, clear, and well-cited briefs supported by frequent, accurate citations to evidence. Unfortunately, that compulsion was insufficient.

Throughout their respective motions, both parties make substantial allegations largely unrelated to the Plaintiffs' remaining causes of action. This case has a long and confusing factual history, the precise details of which are hard to know in light of the parties' stubborn refusal to confine themselves to a discussion of the relevant facts, to cite clearly to page numbers in over 6500 pages of the administrative record, or to engage in the barest attempt at concision.

Plaintiffs, for example, submitted a 69-page "statement of facts" in addition to their 35-page motion for summary judgment. The Court previously dismissed a great number of Plaintiffs' claims including Plaintiffs' claims relating to KISD's SCORE procedures. *See* Doc. 65. Plaintiffs nevertheless devote portions of their "statement of facts" discussing evidence of

KISD's use of SCORE procedures. *See* Doc. 82 at 6. Plaintiffs also devote five pages to describing how TEA cited KISD for various issues related to special education, none of which involve Rob Wood. *Id.* at 3-8. While describing such incidents may serve the Plaintiffs' goal to portray KISD as a bad actor, they tell the Court very little about whether KISD provided Rob Wood with a FAPE and hence likely are irrelevant to the legal claims Plaintiffs assert against it.

Likewise, Plaintiffs painstakingly set forth and quote from numerous emails between the Woods and Rob's teachers, between the teachers themselves, and between teachers and KISD administrators. Some of these emails might tend to support the Woods' contention that Rob's teachers were more concerned with simply completing the various requirements than with ensuring Rob's educational progress. Many of them, however, appear to be no more than an attempt to cast KISD and its teachers in a bad light.[1]

Counsel for both parties also commit the generous but unfortunate error of assuming the Court knows the details of this case as well as they do. KISD, describing Rob's first year at Seven Lakes High School, writes:

> In 2005, R.W. entered Seven Lakes High School as a 9th grader. In April 2006, the ARD committee met to plan R.W.'s education program for the 10th grade year. During the 9th grade, R.W. was enrolled in all regular education programs and received special education in-class support from a special education teacher for his core subject areas, namely, English, Algebra, World Geography and Biology.

Doc. 80 at 24. Plaintiffs, describing the same period, write:

> Late 2005: In Rob's ninth grade year, his social studies teachers told plaintiffs she feared Rob was going to fail his final examination. CAR Vol. V, p.

---

[1] Plaintiffs discuss, for example, emails from Nancy McCanlies, Rob's special education manager at Seven Lakes High School, to Rob's teachers and back. Plaintiffs include numerous emails in which Ms. McCanlies sounds exasperated about the requirements of Rob's IEP and one reply in which Rob's teacher, Mr. Patterson, appears to disparagingly imitate Rob's writing. Mr. Patterson wrote: "Rob be doin' pretty gud dis week, bro. He get ok grade mos time." Doc. 82 at 23 (*citing* CAR Vol. II p. 1309). Although Mr. Patterson's email, if intended as a mockery of his student, certainly was unprofessional and reflects poorly upon him, Plaintiffs' counsel should consider whether this email–and ones like it–fulfill the more important purpose of demonstrating that Rob's teachers, and hence KISD, denied him a FAPE.

279:9-17. Based on his grade and progress reports, plaintiffs were unaware Rob was experiencing such difficulties. Plaintiffs requested and attended an ARD meeting on December 16, 2005 to ask that Rob's teachers communicate better with plaintiffs. *Id.* at pp. 80:22-81:6. They discussed putting together a communication plan.

> . . .

> January 2006: Just after the school holiday break, Rob received two zeros on assignments on which he had not received extended time as required by his IEP. *Id.* at pp. 81, 83.

Doc. 82 at 12. Noticeably absent from both the Woods' and KISD's statement of facts is *any* description of the initial creation of Rob's IEP. The Court is left wondering whether the IEP for Rob's first year at Seven Lakes was carried over from his time at Cinco Ranch Junior High, also a KISD school, or whether the Woods attended an ARD with Seven Lakes teachers and KISD administrators when Rob came to Seven Lakes.

This is no trivial omission. As the parties are aware, when a parent contests the appropriateness of an IEP, as the Woods do here, the Court follows a two-step review, the first procedural, the second substantive: (1) it must determine whether the state complied with the IDEA's procedural requirements, and (2) decide whether the IEP was "'reasonably calculated to enable the child to receive educational benefits.'" *HISD v. V.P. ex rel. Juan P.*, 582 F.3d 576 at 583-84 (5th Cir. 2009) (citing *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 206-07 (1982)). The parties here have alleged no facts, nor cited to any evidence, regarding the formation of Rob's first IEP at Seven Lakes High and the Court therefore lacks any means of determining whether KISD followed the procedural requirements of the IDEA. Such omissions are replete in the parties' pleadings.

Lastly, and most importantly given the magnitude of the record in this case, both parties fail to cite accurately and consistently to the record. As the Court previously has stressed, the sheer volume of evidence in this case necessitates accurate citation to the record so that the Court

may render a decision based on the evidence properly before it. The Court is not required to sift through the record in search of evidence to support a motion for summary judgment nor opposition thereto. *See Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). In those cases in which the record consists of no more than a few documents, an errant citation might create a few moments bother while the Court sifts the scant pages for supporting authority. This is not such a case.

The absence of accurate citations is particularly pronounced when the parties cite to Volume V of the administrative record. Both parties draw the Court's attention to TEA's failure accurately to paginate Volume V. The parties apparently were unable to agree on a citation format for this last volume and offer competing citation forms.

In the beginning of the "statement of facts" which accompanies Plaintiffs' motion for summary judgment, Plaintiffs' counsel, Susan Burgess, explains that she will cite to "witnesses' names and the page numbers of the original transcripts" and provides a table of the witnesses' names and the start and end pages of the witnesses' testimony in both the original transcript pagination and the pagination in the electronic PDF file. A short while later in that same document, Ms. Burgess then cites to "CAR Vol. V, p. 279:9-17" without reference to a witness's name. *See* Doc. 82 at 12-13. Page 279 in the electronic pagination of the PDF document is a portion of the District's questioning of Dr. Bonnie Brookshire, Ph.D. that is unrelated to Plaintiffs' allegation. The first "Page 279" in the transcript pagination is a later portion of that same questioning which also fails to support Plaintiffs' allegations. Plaintiffs cite to the same undefined portion of the transcript with a string of "*Id.*" cites for the following page. Because the Court cannot reasonably locate the cited passages in a document that is close to 2000 pages long, Plaintiffs' allegations are unsupported by the record.

For its part, throughout its motion for summary judgment, KISD follows the general practice of appending a single citation to a paragraph of allegations. The following paragraph is representative:

> [In his ninth grade, Rob] received accommodations, including access to spelling devices, adaptive devices, frequent feedback and prompts, clearly defined and consistent limits and positive reinforcement. He received individualized consultation with special education staff and access to computerized instruction. He received additional support with academics and organization during study hall in a program known as "Spartan Support." Spartan Support was used as a replacement for the previously-used content mastery programs which had been determined to be too restrictive of an option for the District to use. (Vol. V, Tr.P. 67.)

Doc. 80 at 24. The page to which KISD cites is found in the fourth transcript in Volume V on page 197 of the PDF document. Although KISD does not identify the speaker, that page is a portion of Plaintiff John Wood's responses to questioning by Plaintiffs' counsel and the relevant portion reads as follows:

> Q. [Ms. Burgess:] Were both parents present at that particular ARD meeting in April of 2005?
>
> A. [John Wood:] Yes.
>
> Q. And did you tape-record that meeting?
>
> A. Yes.
>
> Q. Now, when R. entered ninth grade, that was the 2005-2006 school year; is that correct?
>
> A. Yes, that's correct.
>
> Q. Now, beginning in the 2005-2006 school year, did R. receive special education content mastery classroom?
>
> A. When we got up to the high school, I think they had–they were calling it content mastery, but they were also calling it Spartan Support.
>
> Q. Spartan Support?
>
> [Page 68]
>
> A. Spartan Support.

CAR Vol. V at 197-98. Mr. Wood did not mention "access to spelling devices, adaptive devices, frequent feedback and prompts, clearly defined and consistent limits and positive

reinforcement." Doc. 80 at 24. Nowhere on page 67 of the transcript, nor on the surrounding pages, appears any discussion of "individualized consultation with special education staff and access to computerized instruction." *Id.* Although Mr. Wood states that Rob received "special content mastery" in the form of Seven Lakes High School's "Spartan Support" program, nothing on that page supports KISD's allegation that "Spartan Support was used as a replacement for the previously-used content mastery programs which had been determined to be too restrictive of an option for the District to use." *Id.*

The Court is unable to determine the merit of the parties' motions for summary judgment. As a result of improper and missing citations, both motions are, in large part, unsupported by the evidence. The Court therefore determines that both motions should be denied. Because the Woods, KISD, and the Court nonetheless wish to see this matter resolved as expeditiously as possible, the Court orders the parties, within 30 days, to file amended motions for summary judgment which overcome the deficiencies the Court has identified in their current pleadings.

The parties will confine their motions to no more than 50 pages, including a statement of the facts. The Court encourages the parties to select from the abundant record only those facts that support their legal arguments and omit those that tend only to cast aspersions on the opposing party.

After the Court dismissed the KISD School Board, Christie Whitbeck, Kevin O'Keefe, and, now, TEA, Plaintiffs are left with their claims arising under the IDEA against KISD only. The relevant inquiry for Plaintiffs' IDEA claim is whether the state complied with the IDEA's procedural requirements and whether the IEP was "'reasonably calculated to enable the child to receive educational benefits.'" *Juan P.,* 582 F.3d at 583-84 (citing *Rowley,* 458 U.S. at 206-07).

For the substantive prong of the *Rowley* test, the Fifth Circuit considers four factors as "indicators of whether an IEP is reasonably calculated to provide a meaningful educational benefit under the IDEA": whether "(1) the program is individualized on the basis of the student's assessment and performance; (2) the program is administered in the least restrictive environment[2]; (3) the services are provided in a coordinated and collaborative manner by the key 'stakeholders'; and (4) positive academic and non-academic benefits are demonstrated." *Juan P.*, 582 F.3d at 584 (citing *Michael F.*, 118 F.3d at 253). "[T]hese factors are . . . intended to guide a district court in the fact-intensive inquiry of evaluating whether an IEP provided an educational benefit," and the court does not err in affording more or less weight to one factor than another. *Michael Z.*, 580 F.3d at 294.

A party challenging implementation of the IEP must show that the "school board or other authorities failed to implement substantial or significant provisions of the IEP." The failure of the local education agency "to provide all the services and modifications in an IEP does not constitute a *per se* violation" of the statute. *Bobby R.*, 200 F.3d at 349. Nor is it necessary for the handicapped student to improve in *every* area to obtain educational benefit from his IEP. *Id.* at 350. School districts are not required to cure or erase the differences between disabled and non-disabled children, but only to develop an individualized program capable of providing an educational benefit to the child. *D.B. ex rel. C.B. v. Houston ISD*, No. Civ. A. H-06-354, 2007 WL 2947443, *11 (S.D. Tex. Sept. 29, 2007) (citing *Daniel R.R. v. State Bd. of Educ.*, 874 F.2d 1036, 1047 (5th Cir. 1989)). *See Rowley*, 458 U.S. at 200-01 ("the intent of the Act was more to

---

[2] Title 20 U.S.C. § 1412(a)(5)(A) states:

> To the maximum extent appropriate, children with disabilities . . . [should be] educated with children who are not disabled, and special classes, separate schooling, or other removal of children with disabilities from the regular educational environment [should occur] only when the nature or severity of the disability of a child is such that education in regular classes with the use of supplementary aids and services cannot be achieved satisfactorily.

As quoted by *Juan P.*, 582 F.3d at 585-86 (observing the IDEA's strong preference in favor of mainstreaming must be weighed in tandem with the Act's main goal of ensuring that a child be provided with a FAPE).

open the door of public education to handicapped children on appropriate terms than to guarantee any particular level of education once inside."). Moreover while the school district and experts may disagree over the diagnosis of a student's disability, "[t]he IDEA charges the school with developing an appropriate education, not with coming up with a proper label with which to describe [the child's] multiple disabilities." *Heather S. v. Wisconsin*, 125 F.3d 1045, 1055 (7th Cir. 1997).

The parties should confine themselves to a discussion of these legal standards and an analysis of the facts that tend to indicate whether KISD violated or complied with them. Because the Court previously determined that it would reach a decision on the administrative record and no further evidence, and because Plaintiffs have failed to move for reconsideration of that order, the parties likewise shall cite only to the five volumes of the administrative record on file with the Court.

Because the parties were unable to agree to a uniform citation format and because neither parties' format is satisfactory, the parties shall cite to the administrative record in the following fashion:

First:  The parties will cite to Volumes I through IV of the Certified Administrative Record ("CAR") by the Bates Number in the bottom right hand corner of each page. Parties will identify the document from which they quote (e.g. "Scottish Rite Evaluation") and the relevant affiant or witness when citing hearing transcripts (e.g. "Testimony of John Wood"). For example, a complete citation would appear as follows: Email from Kevin O'Keefe to John Wood, CAR Vol. II at 973.

Second:  The parties will cite to Volume V of the Certified Academic Record by reference to the page number of the document, consecutively paginated from 1, the first

page in the volume, to 1842, the last page in the volume.[3] The parties likewise will identify the relevant document, affiant, or witness when citing to this record. A citation would appear as follows: Testimony of John Wood, CAR Vol. V at 197.

The parties shall cite to the relevant portion of the record whenever necessary to indicate evidentiary support for their claims.

The Court hopes that, although the required revisions no doubt will be time consuming, they will expedite the Court's resolution of this case.

For the foregoing reasons, the Court hereby

**ORDERS** that Defendant Texas Education Agency's motion for summary judgment (Doc. 88) is **GRANTED**. Further, the Court

**ORDERS** that Defendant Katy Independent School District's motion for summary judgment (Doc. 80) and Plaintiffs John and Rene Wood's motion for summary judgment (Doc. 82-12) are

**DENIED.** The parties may file amended motions for summary judgment that comply with this opinion and order within thirty days of the date of this order.

SIGNED at Houston, Texas, this 12th day of September, 2012.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE

---

[3] Most PDF display programs, including Adobe products, display the page number of the currently viewed page either in the top navigation pane or in a side-bar navigation pane.